# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-0772V

|  |  |
|---|---|
| MARNI SCHMIDT,<br><br>                     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: October 8, 2025 |

*Jessica Ann Wallace, Siri & Glimstad, LLP, Aventura, FL, for Petitioner.*

*Madylan Louise Yarc, U.S. Department of Justice, Washington, DC, for Respondent.*

### **RULING ON ENTITLEMENT**[1]

On July 15, 2022, Marni Schmidt filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she amended on October 26, 2022. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on October 18, 2021. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent has argued that Petitioner is not entitled to compensation (ECF No. 35), and the parties have now fully briefed entitlement (ECF Nos. 40, 55, 56). For the reasons set forth below, I find that record evidence preponderantly establishes that the vaccine alleged as causal was likely administered in Petitioner's left shoulder, and that she has satisfied the remaining requirements for entitlement.

## I.  Relevant Factual History

### A. Medical Records

Petitioner received the flu vaccine at issue in this case on October 18, 2021, during an appointment with Dr. Marie Neilsen to establish care. Ex. 2 at 3-5. The record of this appointment states that the vaccine was administered in Petitioner's *right* deltoid. *Id.* at 5; Ex. 12 at 3; Ex. 14 at 8; Ex. 17 at 45. A separate record listing only immunizations, obtained when Petitioner specifically requested a complete certified vaccine administration record, is silent as to the situs of administration, simply listing an October 18, 2021 immunization and the dosage. Ex. 13 at 5.

Dr. Nielsen prescribed oral steroids for Petitioner on November 9, 2021. Ex. 6 at 1. There do not appear to be further medical records as to the circumstances surrounding this prescription.

On November 11, 2021, Petitioner saw Dr. Ronnie Givens for an annual gynecologic examination. Ex. 3 at 11-13. The record notes that Petitioner reported "shoulder pain," without specifying which shoulder was affected or providing further details. *Id.* at 12. Dr. Givens referred Petitioner to an orthopedist. *Id.* at 13.

Eleven days later (November 22, 2021), Petitioner saw orthopedist Dr. David Jaskwhich. Ex. 4 at 11. She now sought care for left shoulder pain, reporting "[o]nset 10/18/2021 after flu shot." *Id.* at 12. She had taken a steroid dose pack without relief. *Id.* A handwritten note on the bottom of an intake form states "L shoulder > elbow after flu shot." *Id.* at 34. On examination, Petitioner's left shoulder exhibited limited active and passive range of motion, with positive Neer's and O'Brien's tests. *Id.* at 13. Dr. Jaskwhich assessed Petitioner with left shoulder pain and bursitis, and administered a steroid injection. *Id.*

An MRI showed an intact rotator cuff and findings suspicious for adhesive capsulitis. Ex. 4 at 15-16. Petitioner returned to Dr. Jaskwhich on January 3, 2022 to review the MRI. *Id.* at 8. Dr. Jaskwhich assessed Petitioner with bursitis and adhesive capsulitis of the left shoulder, administered another steroid injection, and referred Petitioner to physical therapy ("PT"). *Id.* at 10.

The following week (January 10, 2022), Petitioner underwent a PT evaluation of her left shoulder. Ex. 5 at 3. The record of the evaluation states that Petitioner reported

2

"initial pain following a flu shot (10/18/21) which did not go away as normal." *Id.* Petitioner continued PT until July 2022. Exs. 5, 8. She followed up with Dr. Jaskwhich in March and May 2022, in addition to later care not relevant to this Ruling. Ex. 4 at 5-7; Ex. 9 at 11-14. At her May 3, 2022 appointment (just over six months after vaccination), Petitioner had seen improvement in her range of motion but was still having trouble with abduction and reported radiating pain with all motion. Ex. 9 at 13. Her left shoulder continued to exhibit limited active and passive range of motion, and Dr. Jaskwhich administered a third steroid injection. *Id.* at 14.

### B.  Affidavit

Petitioner filed an affidavit in support of her claim. Ex. 7. She states that the flu vaccine was injected into her left shoulder and she "immediately experienced a burning sensation" in her arm. *Id.* at ¶ 5.

## II.   The Parties' Arguments

Petitioner argues that although the record of her October 18, 2021 appointment states that the flu vaccine was administered in her right arm, the certified vaccination record "is silent on the site of administration." Petitioner's Motion for Ruling on the Record, filed Mar. 18, 2024, at *13 (ECF No. 40) ("Mot."). She asserts that written records that are inconsistent should be afforded less weight than those that are consistent. *Id.*

Petitioner cites *Covey v. Sec'y of Health & Human Servs.*, No. 21-400V, 2024 WL 446203 (Fed. Cl. Spec. Mstr. Jan. 2, 2024) as an example of a special master finding that a vaccine was administered in a situs different than that recorded contemporaneously, based on the claimant's later, consistent reporting to treating physicians. Mot. at 13. Although the vaccination record states the vaccine was administered in her right arm, all other records consistently support that she reported left shoulder pain that began when the vaccine was administered. *Id.* at *13-14.

Respondent asserts that the record of Petitioner's October 18, 2021 visit and the vaccination record are not inconsistent. Respondent's Response, filed Aug. 15, 2024, at *8 (ECF No. 55) ("Resp."). Rather, the vaccination record is silent as to situs, but this does not render it inconsistent with the October 18th record. *Id.* at *8-9. And unlike in *Covey*, this case does not involve a discrepancy between digital and handwritten portions of a form. *Id.* at *9.

Respondent also argues that the fact that Petitioner never sought treatment for her right shoulder does not establish that the vaccination record is incorrect. Resp. at *9. Instead, it is entirely possible that Petitioner received a vaccine in her right shoulder, and subsequently experienced *unrelated* left shoulder pain. *Id.* Respondent emphasizes that the first medical appointment at which Petitioner complained of shoulder pain does not specify which shoulder was affected. *Id.* And it was not until over a month after vaccination that she reported vaccination-related pain in her left shoulder. *Id.* at *10.

3

### III.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11-685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

4

vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

"[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where the petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec'y of Health & Human Servs.*, No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where petitioner did not seek additional treatment after the five month mark.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction

studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

## IV. Ruling on Entitlement

### A. Factual Finding on Situs

I find that the record preponderantly supports a finding that Petitioner's October 18, 2021 flu vaccine was likely administered in her left shoulder. Although the record of that appointment states that it was administered in her right deltoid, subsequent medical records support a finding that it was actually administered in her left arm, and no other records suggest this finding would be in error.

It is true that the record of Petitioner's first appointment after vaccination does not specify which shoulder was affected. However, this is unsurprising, given that it was a gynecological appointment. And that provider referred Petitioner to a specialist, who she saw just over a week later. At that appointment, just over a month after vaccination, Petitioner told Dr. Jaskwhich that her left shoulder pain began on October 18th after receiving a flu vaccine. Ex. 4 at 12. At Petitioner's PT evaluation, Petitioner again related her left shoulder pain to her October 18th vaccination. Ex. 5 at 3. And Petitioner provided

6

testimony that the vaccine was administered in her left shoulder, causing an immediate burning sensation. Ex. 7 at ¶ 5.

Petitioner sought care for left shoulder pain relatively soon after vaccination, and related her pain to vaccination. And she consistently described her pain as starting on the October 18, 2021 – the date of vaccination – following administration of the vaccine.

### B. Factual Findings Regarding QAI Criteria for Table SIRVA and Other Entitlement Requirements

Respondent does not contest the remaining SIRVA QAI criteria,[4] and I find that they are satisfied. There is no evidence that Petitioner had a pre-vaccination left shoulder condition, or another condition or abnormality, that would explain her symptoms after vaccination. Ex. 2. She exhibited reduced ROM, and her symptoms were limited to her left shoulder (where she received the flu vaccine). Ex. 4 at 8-10, 11-13. The record also contains preponderant evidence that the remaining requirements for entitlement are satisfied. Petitioner experienced residual effects of her condition for more than six months. Ex. 9 at 14. She received a covered vaccine in the United States (Ex. 2 at 3), and has not previously collected an award or settlement of any civil action for damages for her vaccine-related injury (Ex. 7 at ¶ 26).

### Conclusion

Based on my review of the record as a whole, I find that it is more likely than not that the at-issue vaccine was likely administered in Petitioner's left shoulder. I also find that all SIRVA Table requirements are met, as are all statutory requirements for entitlement. Therefore, Petitioner's motion for a ruling on the record that she is entitled to compensation is **GRANTED**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Respondent's Amended Rule 4(c) Report, filed Nov. 14, 2023, at *7 n.3 (ECF No. 35).